OTC

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
NOV 1 2 2025
DANIEL J. McCOY, CLERK
BY:

Pia Holmes
2020 Crabapple Drive
Shreveport, LA 71118
318-834-4247
Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| Pia Holmes<br>Plaintiff, Pro Se<br>vs.<br>Sinima Music/Beats % John Andrew<br>Unknown Business Formation<br>146 Meadow Run Drive<br>Conroe, TX 77384-5606 | Case No.<br>**COMPLAINT/APPLICATION**<br>for INJUNCTION(s) and Relief<br>Jurisdiction<br>28 U.S.C. § 1331<br>The Lanham Act, 15 U.S.C. § 1125(a),<br>U.S. Copyright Act, 17 U.S.C. § 101, et seq |

Hearing Date: Place: Courtroom: Time:

**PRELIMINARY STATEMENT**

1. Plaintiff is an independent artist operating in a digital marketplace where the economics of content creation are challenging. Plaintiff resides at 2020 Crabapple Drive in Shreveport, LA 71118. For an artist to earn even a single cent from views on a platform like YouTube, their work might need to be streamed over ten thousand times. The primary source of viable income is not from views alone, but from the 5-7 cents an artist can earn when a single viewer engages with advertisements played around their content. This advertising revenue is the *financial lifeblood* for most independent artists.

2. The Defendant, Sinima Music aka Sinima Beats % John Andrew, does business online internationally. The business formation is unknown, However its publishing credentials are listed with BMG, and Montgomery County, TX property records show Sinima and/or John Andrew located at an address of 146 Meadow Run Drive, Conroe Tx. Its website is https://www.sinimabeats.com/

3. This court has jurisdiction over this civil action because the plaintiff's claims arise under federal law, 28 U.S.C. § 1331, The Lanham Act, 15 U.S.C. § 1125(a), and U.S. Copyright Act, 17 U.S.C. § 101, et seq.

## STATEMENT OF FACTS

4. For over a decade, Plaintiff has purchased premium instrumental music licenses from the Defendant, to create new derivative works. Recently, however, the Defendant has implemented a practice of placing automated Content ID and/or Copyright Claims on derivative works created by the Plaintiff and other Artists holding premium, non-expiring licenses. This practice causes all of the Licensees YouTube advertising Revenue associated with these new, original songs to be automatically diverted and deposited into the Defendants Google Adsense Account.

5. The consequences of the Defendant's actions are severe and multifaceted. Whenever the Defendant places a Content ID claim on a non-expiring licensee's product: It blocks the songwriter from receiving their rightful publishing share and copyright recognition. All of the Licensee's income stream goes into the defendant's accounts instead of the Licensee or the Licensee's distributors. It also blocks the distributors from Content ID Matching, which allows the distributor to collect the ad revenue for the Artist.

6. This Practice converts the Licensees own copyrighted song into the Defendant's revenue stream. The defendant's copyright claim overrides the Licensee and all of the affected licensee's advertisement revenue is deposited into the defendant's Google Adsense Account.

7. When the Defendant Places a Content ID or Copyright Strike on the Licensee's derivative work, the Licensee's youtube account is ineligible for monetization until the defendant removes his tag. His copyright claims destroys the Licensee's public watch hours, making it impossible for an artist to monetize their own channel and overrides the copyright stamp of the distributor, on the derivative work..

8. It directly contradicts the Defendant's commercial promises of "royalty-free" and "unlimited monetization." It silently and unilaterally redirects revenue back to the Licensor, without the artist's consent or disclosure.. 100% of the Licensee's ad revenue is rerouted to the defendant. Revenue generated from Users that share the Licensee product in their videos or advertisements, is also diverted to the Licensor's Google Adsense Account.

9. By Inappropriately tagging derivative works:the Defendant, through this practice. seizes what is often the only income an independent artist ever receives: YouTube advertising money. It harms the long-term catalog value of an artist's work, not just a single upload.

10. Plaintiff is asking the Court to **DECLARE** that **INDIE ARTISTS** who purchase these non-expiring licenses own the exclusive monetization rights to their derivative works. Plaintiff further requests that the Court order the Licensor to cease placing Content ID claims or Copyright claims on, and collecting revenue from, these works.

11. Finally, Plaintiff asks the Court to require the Licensor to clearly and publicly disclose these practices on the home page of his website, www.sinimabeats.com so other artists are not misled when purchasing premium licenses.

## I. REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF

**12. Plaintiff seeks immediate injunctive relief** to halt the Licensor's ongoing and automated seizure of advertising revenue and to prevent him from acting in furtherance. The Licensor's systematic use of YouTube's Content ID system is causing immediate and irreparable harm that cannot be adequately compensated by monetary damages alone.

13. With each passing day, the Licensor's automated claims divert 100% of the advertising revenue generated by artists' derivative works. The Licensor's recent email, in which he asked Plaintiff' to remove her music from her distributors entirely, revoking third party distribution not mentioned in the never-ending license contract, demonstrates his willingness to inflict catastrophic and irreversible damage to Plaintiff.. This is not a speculative future injury; it is a continuous financial drain coupled with an imminent threat of professional annihilation.

14. **This harm transcends mere financial loss.** For independent artists, owning your copyright, as well as benefitting from this revenue is critical for funding future projects, marketing, and sustaining their careers. The Licensor's actions stifle artists' ability to promote their work, damage their goodwill with their audience by interfering with the monetization of their content, and threaten their professional viability and visibility. The automated nature of these claims means the injury compounds daily across a vast number of works. Making a later calculation of damages will be extraordinarily difficult and insufficient to repair the damage to an artist's career momentum and market presence. Without immediate intervention from this Court, the Licensor will continue to unjustly enrich itself at the direct expense of the very artists it purports to support, rendering any final judgment hollow.

II. FEDERAL CLAIMS SUPPORTING LIKELIHOOD OF SUCCESS ON THE MERITS

**15. False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)**. The Licensor's commercial representations—including terms such as "unlimited monetization," "no royalties owed," and a license that "never expires"—are false and misleading. By systematically using Content ID to divert 100% of the AD revenue from the Licensee's derivative works, the Licensor engages in conduct that directly contradicts its advertising, deceives consumers as to the nature and quality of the commercial rights being sold, and constitutes federal unfair competition.

**16. Copyright Misuse.** The Licensor is leveraging its valid copyright in the underlying instrumental to gain power and revenue beyond the scope of the rights granted by the Copyright Act. By contractually licensing the right to create and monetize a derivative work and then using its copyright to seize all revenue from that new work, the Licensor frustrates the public policy of the Copyright Act, which is to encourage the creation of new works. This conduct constitutes an inequitable abuse of the copyright monopoly.

## III. MENTAL ANGUISH

**17.** "The Defendant's demand that I remove my distributed works—after using Content ID to reroute my YouTube ad monetization and render multiple licensed tracks on **Pia's 2025 Rock Album** ineligible for monetization—caused substantial mental anguish. I encourage my viewers to watch ads on my content, and his decision to divert that revenue served no legitimate contractual purpose.

**18.** If a viewer watches an ad, but decides not to watch the content, that ad revenue is still credited towards that asset. His demand placed undue pressure on me to dismantle my established catalog, threatening my professional stability as an independent artist. This unnecessary and coercive instruction would cause significant distress to any reasonable person in my position."

## IV. SUPPORTING ARGUMENTS DEMONSTRATING LIKELIHOOD OF SUCCESS

**19. The Licensee Holds Perpetual Exclusive Rights to the Derivative Work** because the license does not expire. Upon creating a new song by adding original vocal and other elements, the Licensee becomes the author and owner of a new, copyrightable derivative work. Absent an express contractual provision granting the Licensor a share of revenue from this new work, the Licensor has no statutory right to claim it.

**20. The Promise of "Unlimited Monetization" is a Material and Enforceable Term.** The Licensor's promise of "unlimited monetization" cannot be rendered illusory. A contract cannot grant a right with one clause and then permit its unilateral, total nullification with another. The Licensor's subsequent seizure of all youtube ad revenue constitutes a breach of a material term of the agreement and a failure of consideration. The Defendant's post-purchase declaration that licensees "cannot be used in monetization systems managed by distributors" is a unilateral and bad-faith attempt to rewrite the central terms of the agreement.

**21. The Licensor Breached the Implied Covenant of Good Faith and Fair Dealing.** The Licensor's use of Content ID to prevent the Licensee from earning any revenue from the derivative work violates the implied covenant of good faith and fair dealing. This conduct frustrates the core purpose of the agreement and deprives the Licensee of their reasonably expected benefits under the contract.

**22. Contractual Ambiguities Must Be Construed Against the Drafter**. To the extent the license agreement contains conflicting terms regarding monetization and the Licensor's rights, the *doctrine of contra proferentem* dictates that any such ambiguity must be interpreted against the Licensor as the drafting party. The interpretation that favors the Licensee's right to monetize their derivative work must prevail.

## V. LEGAL ANALYSIS

**23. Plaintiff Has a Strong Likelihood of Success on its False Advertising Claim.** The Lanham Act prohibits false or misleading descriptions of fact in commercial advertising that misrepresent the nature or qualities of goods or services. 15 U.S.C. § 1125(a)(1)(B). A statement can be "literally false by necessary implication" when it is unambiguous and the consumer would recognize the claim as false. See REX - Real Estate Exchange Inc v. Zillow Inc, No. 2:21-cv-00312 (W.D. Wash. Aug. 18, 2023). In REX, the court found that placing listings under two different tabs, "Agent listings" and "Other listings," created the unambiguous and false assertion that the second tab contained all other listings. **Similarly, the Licensor's promise of "unlimited monetization" is rendered false** by the necessary implication of its own conduct. By universally applying Content ID to claim 100% of revenue, the Licensor makes the advertised right to monetize impossible, creating a false representation about the nature of the rights sold. This deception is material, as the ability to monetize is central to a licensee's purchasing decision, establishing a strong likelihood that Plaintiff will prevail on this claim.

**24. Plaintiff is Likely to Succeed on its Copyright Misuse Claim.** The defense of copyright misuse prevents a copyright holder from leveraging its statutory monopoly to engage in anticompetitive conduct or otherwise secure benefits beyond the scope of the Copyright Act. While a copyright owner may impose restrictions to protect its work, these restrictions cannot frustrate the law's public purpose. See Apple Inc. v. Psystar Corp., 658 F. 3d 1150 (9th Cir. 2011). In Apple, the court found no misuse where Apple restricted its software to its own hardware because it did not prevent the development of competing products. **The Licensor's conduct here is distinguishable.**

**25.** The Licensor is not merely controlling its own copyrighted work; it is using its copyright as a tool to expropriate 100% of the revenue from a new, derivative work that the Licensee was explicitly authorized to create and exploit. This extends the Licensor's copyright monopoly beyond the underlying instrumental and into the separate, new work created by the Licensee, thereby frustrating the purpose of the license and the Copyright Act, and making success on this claim highly probable.

**26. The Contract is Likely Unenforceable as an Illusory Promise.** A promise is illusory and unenforceable if one party retains the sole discretion to modify or terminate the obligation. In Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15 (Mo. Ct. App. 2008), the court held that an arbitration agreement was fatally illusory because the employer retained the right to discontinue the program "at its sole discretion" and "at any time."

**27. The "Illusory Promise" principle applies directly to the Licensor's promise of "unlimited monetization."** If the Licensor can, at its sole discretion and at any time, use Content ID to divert all revenue from the Licensee's work, then the promise of monetization is not a binding obligation but an illusory one. Plaintiff is likely to succeed in showing that the Licensor cannot simultaneously grant the right to monetize and retain the unilateral power to make that right worthless.

**28. The Licensor's Actions Show a Clear Breach of the Implied Covenant of Good Faith.** Every contract contains an implied covenant of good faith and fair dealing, which requires that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

**29.** A breach of this covenant occurs when a party's conduct, though not explicitly forbidden, is inconsistent with the other party's reasonable expectations and frustrates the contract's overarching purpose. See Framework MI, Inc. v. CVS Health Corporation, No. 20-cv-8438 (S.D.N.Y. June 11, 2021).

30. The primary benefit and purpose of a premium, perpetual license is the ability for the artist to commercially exploit their new song. By using Content ID to claim all revenue, the Licensor has taken an action that completely frustrates this purpose, violating the implied covenant of good faith and fair dealing and demonstrating a strong likelihood of success on the merits for this breach.

31. The defendant recently employed AdRevis, a company in California that specializes in taking youtube ad revenue from youtube accounts that are unlicensed or engaging in copyright infringement. This mark on my product appears **instead of my copyright,** and is a Red Checkmark for any Indie Artist, and a sure indication that money generated from the Licensees content is being diverted into the defendants Adsense or AdRevis accounts.

MikS Music
https://www.miksmusic.com › resolve-adrev-third-party-copyright-clai...

How to Resolve AdRev For The Third Party...

**AdRevis** a California based company that enables music copyright owners to get a share of advertisement revenue by displaying ads in YouTube videos that use their music without permission or a license.... See more




**Paralyzed-917**
Sinima Beats

Content found in
1:15 - 3:21

Content type
Audio

Claimants
Adrev for Rights Holder

**Impact on video**

**Monetization**
If you become a member of the YouTube Partner Program, this claim may affect your ability to monetize the video. Learn more

Respectfully Submitted

Signed / Pia Holmes
2020 Crabapple Drive
Shreveport, LA 71118
theblackcowgirl@gmail.com

PROPOSED ORDER

WHEREFORE, Plaintiff respectfully requests that this Court issue a preliminary and permanent injunction and enter a judgment in favor of Plaintiff, awarding the following relief:

1. A declaratory judgment stating that Plaintiff and all similarly situated licensees who have purchased premium, perpetual, or non-expiring licenses from the Defendant hold the exclusive and irrevocable right to monetize the derivative works they create under said licenses, **free from any claims or *interference by the Defendant.***

*2. A declaration* that INDIE ARTISTS who purchase these premium non-expiring licenses own the exclusive monetization rights to their derivative works.

3. A preliminary and permanent injunction enjoining the Defendant, its agents, employees, and all persons acting in concert with it, from: a. Placing, maintaining, or enforcing any YouTube Content ID claims or similar automated revenue claims on any derivative work created by Plaintiff or any other licensee under a premium, perpetual, or non-expiring license. b. Claiming, collecting, or otherwise receiving any portion of the revenue generated from the exploitation of said derivative works. c. Threatening, contacting, or directing Plaintiff or any third-party distributor to remove, block, or de-monetize Plaintiff's derivative works from any platform or system.

4. An order requiring Defendant to issue a clear and conspicuous public disclosure on its website [www.sinimabeats.com] and at all points of sale for its licenses, fully explaining its use of Content ID and its practices regarding the monetization of derivative works created by its licensees.

5. Awarding Plaintiff Mental Anguish damages for the violation of Louisiana Civil Code Article 2315.4 stating general and special damages, exemplary damages may be awarded if the injuries on which the action is based were caused by a wanton or reckless disregard for **the rights** or safety of others.

6. Mediation, and such other and further relief as the Court deems just and proper, with any monetary proceeds to be deposited in the United States District Court Shreveport, Federal Court Registry for the benefit of the Plaintiff.

So ordered ______________________________